UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

HERBERT SCOTT,

**OPINION AND ORDER**
**09 CV 2119 (SJF)(ARL)**

                   Plaintiff,

      - against-

SAXON LOAN SERVICES,

                 Defendant.
--------------------------------------------------------X

FEUERSTEIN, J.

On May 18, 2009, *pro se* plaintiff Herbert Scott ("plaintiff") filed this action against

defendant Saxon Loan Services ("defendant") pursuant to this Court's diversity jurisdiction, 28

U.S.C. § 1332, seeking, *inter alia*, to recover monetary damages for negligence, fraud, trespass,

abuse of process, slander of title, unjust enrichment and civil conspiracy. Defendant now moves

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its

entirety for failure to state a claim. Plaintiff has not opposed the motion. For the reasons stated

herein, defendant's motion is converted to a motion for summary judgment pursuant to Rule 56

of the Federal Rules of Civil Procedure and, as such, is granted.


I.     Background

     A.    Factual Background

Plaintiff is a resident of the State of New York and, at all relevant times, owned real

property located at 109 Maple Lane, Medford, New York ("plaintiff's property"). (Complaint

[Compl.], ¶ 1).

Defendant's principal place of business is located in Fort Worth, Texas. (Compl., ¶ 2).

In March 2005, NovaStar Mortgage, Inc. ("NovaStar"), defendant's assignor, agreed to refinance plaintiff's property based upon information provided by plaintiff and an independent appraisal of the property performed by Logistics 4 Real Estate ASD ("Logistics"), which estimated the market value of the property as of March 10, 2005 at three hundred twenty-five thousand dollars ($325,000.00). (Declaration of Schuyler B. Kraus, Esq. [Kraus Decl.], Ex. B).

In March 2005, plaintiff borrowed two hundred eighty-seven thousand dollars ($287,000.00) from NovaStar ("the mortgage loan"). The mortgage loan was secured by a thirty (30) year mortgage on plaintiff's property and an "Adjustable Rate Note" ("the Note"), both executed by plaintiff on March 25, 2005. (Kraus Decl., Exs. C-E). On that same date, plaintiff also executed: (1) a "Variable Rate Mortgage Program Disclosure," which described "the features of the adjustable rate mortgage ("ARM") program" into which he was entering including, *inter alia*, how his interest rate and payment would be determined and how his interest rate and monthly payment could change, (Kraus Decl., Ex. F); (2) a Settlement Statement of the United States Department of Housing and Urban Development ("HUD-1 Settlement Statement"), which indicated all receipts and disbursements made on his account or by him during the mortgage loan transaction, (Kraus Decl., Ex. G); and (3) a "Negative Information Disclosure," which advised him that late payments, missed payments or other defaults on the mortgage loan may be reflected in his credit report. (Kraus Decl., Ex.M).

Section 2 of the Note indicates, in relevant part, that interest would be charged on the principal of the mortgage loan at a yearly interest rate of 5.825% and that the interest rate "may change in accordance with Section 4 of [the] Note." (Kraus Decl., Ex. D). Section 4 of the Note

2

indicates, *inter alia*, that the interest rate under the Note may change on the first day of April, 2007 "and on that day every sixth months thereafter" ("the Change Date") "based on * * * the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ('LIBOR'), as published in *The Wall Street Journal* ["the Index"]," and sets forth the method by which the adjustable interest rate would be calculated. (Id.) The terms of Section 4 of the Note were incorporated into the mortgage via an "Adjustable Rate Rider" attached thereto. (Kraus Decl., Ex. E).

Section 22 of the mortgage expressly authorizes defendant, *inter alia*, to accelerate payment of the full principal amount of the mortgage loan and to commence a proceeding seeking to foreclose the mortgage and to sell plaintiff's property upon plaintiff's default of the mortgage loan. (Kraus Decl., Ex. C).

By letter dated March 28, 2007, defendant informed plaintiff that effective May 1, 2007, it had re-calculated plaintiff's interest rate, in accordance with the Note, at 8.825%, thereby increasing plaintiff's monthly payment by five hundred fifty-three dollars and eighty-one cents ($553.81), i.e., from one thousand six hundred eighty-eight dollars and fifty-five cents ($1,688.55) to two thousand two hundred forty-two dollars and thirty-six cents ($2242.36). (Kraus Decl., Ex. H).

By letter dated September 24, 2007, defendant informed plaintiff that effective November 1, 2007, it had re-calculated plaintiff's interest rate, in accordance with the Note, at 9.825%, thereby increasing plaintiff's monthly payment to two thousand four hundred thirty-nine dollars and seven cents ($2439.07), an increase of one hundred ninety-six dollars and seventy-one cents ($196.71) over the prior increase. (Kraus Decl., Ex. H).

By letters dated March 29, 2008 and April 3, 2008, defendant informed plaintiff that effective May 1, 2008, it had re-calculated plaintiff's interest rate, in accordance with the Note, at 8.825%, thereby decreasing plaintiff's monthly payment to two thousand two hundred forty-three dollars and sixty-eight cents ($2243.68), a decrease of one hundred ninety-five dollars and thirty-nine cents ($195.39). (Kraus Decl., Ex. H).

By letter dated September 24, 2008, defendant informed plaintiff that effective October 1, 2008, it had re-calculated plaintiff's interest rate, in accordance with the Note, at 8.25%, thereby further decreasing plaintiff's monthly payment to two thousand one hundred thirty-four dollars and thirty-three cents ($2134.33), a decrease of one hundred nine dollars and thirty-five cents ($109.35). (Kraus Decl., Ex. H). Plaintiff apparently made the new monthly payment for four (4) months, but did not make the payment due on February 1, 2009, or any payment thereafter, at least prior to the commencement of this proceeding.

By letter dated February 18, 2009, defendant informed plaintiff that it had not received plaintiff's payment due February 1, 2009 and, thus, was imposing a late charge in the amount of forty-two dollars and sixty-eight cents ($42.68). (Kraus Decl., Ex. I). Defendant requested that plaintiff contact it to either make the payment or discuss additional options available to plaintiff. (Id.)

By letter dated March 23, 2009, defendant advised plaintiff of the options available to him to avoid foreclosure of his home due to his delinquency in making payments under the mortgage loan, including a repayment plan, reinstatement of the loan, a modification of the loan, a short sale or a deed-in-lieu of foreclosure. (Kraus Decl., Ex. J).

By letter dated March 25, 2009, defendant informed plaintiff that effective May 1, 2009,

it had re-calculated plaintiff's interest rate, in accordance with the Note, at 7.25%, thereby again decreasing plaintiff's monthly payment to one thousand nine hundred fifty-two dollars and fifty-seven cents ($1952.57), a decrease of one hundred eighty-one dollars and seventy-six cents ($181.76). (Kraus Decl., Ex. H).

By letter dated April 28, 2009, defendant notified plaintiff, *inter alia*, that as of April 25, 2009, his mortgage loan was eighty-three (83) days in default; that he was at risk of losing his home; that he could cure his default by remitting payment in the amount of six thousand five hundred fifty dollars and three cents ($6,550.03) by May 28, 2009; that he was encouraged to take immediate steps to resolve his default; and that if his default was not resolved within ninety (90) days from the date of the notice, defendant may commence legal action against him. (Compl., Ex. A; Kraus Decl., Ex. K). Plaintiff commenced the instant action less than three weeks later.

By letter dated June 25, 2009, following the commencement of this action, sent to plaintiff via certified mail return receipt requested, defendant provided plaintiff with "formal notice" that he was in default of his mortgage loan and demanded payment of the amount in default ($10,552.27), plus any regular payment, late charges or fees, within thirty (30) days from the date thereof ("the cure date"). (Kraus Decl., Ex. L). The letter further advised plaintiff, *inter alia*, that in the event he failed to pay the full amount of the default by the cure date, defendant would "accelerate the entire sum of principal [$274,581.68] and accrued but unpaid interest on [his] loan and deem it immediately due and payable" and "seek any and all remedies that it may have under the Note and [mortgage], such as the foreclosure sale of the [plaintiff's] property * * *." (Id.)

5

According to defendant, no action to foreclose the mortgage and sell plaintiff's property had been commenced as of the date it filed its motion to dismiss. Nor has either party advised the Court that a foreclosure proceeding has been commenced to date.

### B.    Procedural History

On May 18, 2009, following defendant's April 28, 2009 letter, plaintiff filed this action against defendant pursuant to this Court's diversity jurisdiction, 28 U.S.C. § 1332, alleging, *inter alia*: (1) that he purchased a high cost mortgage loan "under fault [sic] pretext an [sic] predatory lending scheme devised by the defendant and unknown others with the intent to gain unjust enrichment," (Compl., ¶ 4); (2) that the mortgage loan "was a sub-prime loan with an adjustable rate mortgage clause coupled with a high cost increase in interest," and that he "was under the impression that [the] mortgage was a fixed [rate] mortgage," (Compl., ¶ 7); (3) that his mortgage "was illegally inflated by both the mortgage broker and the lender from which the interest rate was prematurely increased by 4.5% absent any maturity date," (Compl., ¶ 5); (4) that he "was never informed or notified of the details surrounding the mortgage despite the fact that the HUD-1 documents and closing statements had outlined several participants who did received [sic] monies for no reason at all," (Compl., ¶ 6); (5) that "the original lender intends to initiate foreclosure proceedings against [him] * * *" and "should not press [him] for any arrears on the loan nor * * * threaten [him] with foreclosure action," (Compl., ¶¶ 8-9); and (6) that defendant should be held to have "waived its opportunity to commit to a check and balance of the debt verse [sic] the income ratio" based upon its issuance of "a no-doc[umentation] mortgage and or [sic] a stated mortgage absent any income-verification * * *," (Compl., ¶ 10). Plaintiff seeks

compensatory and punitive damages in an unspecified amount and an order vacating any judgment of foreclosure and sale entered against plaintiff's property. (Compl., "Wherefore" clause).

Defendant now moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety for failure to state a claim. Defendant served plaintiff with: (1) the notice of motion and accompanying declaration of Schuyler B. Kraus, Esq., with exhibits, and memorandum of law; (2) a "Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings" pursuant to Local Civil Rule 12.1 which advised him, *inter alia*, that "the Court may treat [the] motion [to dismiss] as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure" and that his complaint "may be dismissed without a trial if [he] [did] not respond to [defendant's] motion by filing sworn affidavits or other papers as required by Rule 56(e)," (emphasis omitted); and (3) a copy of the text of Rule 56. Although defendant advised plaintiff that he was required to serve any opposition papers by October 27, 2009, plaintiff has not served any opposition, or otherwise responded, to the motion.


II.     DISCUSSION

      A.     Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally

construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). The Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153 (citing International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

Where, as here, matters outside the pleadings are presented on a motion made pursuant to Rule 12(b)(6), and are not excluded by the Court, Rule 12(d) of the Federal Rules of Civil Procedure provides that "the motion must be treated as one for summary judgment under Rule 56 [and] [a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." See Nunez v. Hasty, No. 04-CV-1282, 2006 WL 2589254, at * 3 (E.D.N.Y. Sept. 8, 2006). In actions involving *pro se* litigants, the district court or the moving party must provide notice to the litigant of the nature of a summary judgment motion and the consequences of his or her failure to respond to such a motion. See Bhatia v. City of Shelton, No. 08-3091-cv, 2010 WL 308988, at * 1 (2d Cir. Jan. 28, 2010); Irby v. New York City Transit Auth., 262 F.3d 412, 414 (2d Cir. 2001).

To this end, the Southern and Eastern Districts of New York have developed Local Civil Rule 12.1, which requires that "[a] represented party moving to dismiss [under Rule 12(b)(6)] * * * against a party proceeding pro se, who refers in support of the motion to matters outside the

8

pleadings * * * shall serve and file the following [Notice To Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings ("the 12.1 Notice")] at the time the motion is served." The 12.1 Notice informs the *pro se* plaintiff, *inter alia*, as follows:

> "The defendant * * * has moved to dismiss * * * pursuant to Rule 12(b) * * * of the Federal Rules of Civil Procedure and has submitted additional written materials. This means that the defendant has asked the court to decide this case without a trial, based on these written materials. You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For this reason, THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits and other papers as required by Rule 56(e). * * * In short, Rule 56 provides that you may NOT oppose the defendant's motion simply by relying upon the allegations in your complaint. Rather, you must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. * * * If you do not respond to the motion on time with affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial. * * *" (emphasis in original).

Although defendant initially failed to include the requisite 12.1 Notice when it served its motion to dismiss on plaintiff, it subsequently re-served its motion on plaintiff five (5) days later with a copy of the 12.1 Notice and the text of Rule 56 of the Federal Rules of Civil Procedure.

Since defendant has substantially complied with the notice requirements of Local Civil Rule 12.1, thereby providing plaintiff with notice of the nature of a summary judgment motion and the consequences of his failure to respond to the motion, i.e., dismissal of his complaint without trial, and plaintiff has had a reasonable opportunity to provide evidence in support of his allegations in the complaint, defendant's motion is converted into a Rule 56 motion for summary judgment in accordance with Rule 12(d). See, e.g. Roberts v. Phillips, No. 06 Civ. 2866, 2009 WL 3241525, at * 1 n. 2 (S.D.N.Y. Sept. 30, 2009); Josey v. New York City Police Dep't, No.

9

07-Civ. 6420, 2008 WL 2676620, at 8 1 (S.D.N.Y. July 7, 2008); cf. Hernandez v. Coffey, 582 F.3d 303, 309 n. 2 (2d Cir. 2009) (distinguishing cases in which conversion was found to be proper because the defendants provided notice pursuant to Local Civil Rule 12.1 to the *pro se* plaintiffs).

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it 'might affect the outcome of the suit under governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be

10

drawn, in favor of the party opposing summary judgment," Spinelli, 579 F.3d at 166 (internal

quotations and citation omitted), to determine whether there is a genuine issue for trial. See

Ricci, 129 S.Ct. at 2677. A genuine issue exists for summary judgment purposes "where the

evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County

of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d

Cir. 2007)). The moving party bears the initial burden of establishing the absence of any genuine

issue of material fact, after which the burden shifts to the nonmoving party to "come forth with

evidence sufficient to allow a reasonable jury to find in [its] favor." Spinelli, 579 F.3d at 166

(internal quotations and citation omitted). Thus, the nonmoving party can only defeat summary

judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences

were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at

trial. Id. (internal quotations and citations omitted); see also Celotex Corp. v. Catrett, 477 U.S.

317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).


     B.     Negligence (First Claim for Relief)[1]

     In his first claim for relief, plaintiff alleges that defendant was negligent in "omitt[ing]

significant documentations [sic] and other supportive evidence to prove that it was the true

holder and owner of both the note and mortgage *at the time it had commenced * * * [a]

foreclosure proceeding*[]." (Compl., ¶ 2) (emphasis added).

     In order to prevail on a negligence claim under New York law, a plaintiff must establish

---

[1] Since the Court's jurisdiction is premised on diversity of citizenship, New York law applies to
plaintiff's claims. See McGrath v. Toys "R" Us, Inc., 356 F.3d 246, 249 (2d Cir. 2004).

(1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the defendant's breach was the proximate cause of the plaintiff's injuries. See Curley v. AMR Corp., 153 F.3d 5, 13 (2d Cir. 1998); Akins v. Glens Falls City Sch. Dist., 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981). Even assuming, without deciding, that defendant owed plaintiff a duty of care under the circumstances alleged herein, plaintiff cannot establish that defendant breached any such duty because defendant had not commenced a foreclosure proceeding at the time this action was filed and there is no evidence that any such proceeding has been commenced to date. In fact, plaintiff filed the instant action prior to the expiration of the ninety (90) day period provided in defendant's April 28, 2009 letter for plaintiff to cure his default, presumably to forestall defendant's commencement of any foreclosure proceeding against him. Moreover, plaintiff has not demonstrated any damages resulting from defendant's alleged omission of evidence proving that it was assigned NovaStar's interest in the mortgage and Note.[2] Accordingly, the branch of defendant's motion seeking summary judgment dismissing plaintiff's negligence claim is granted and plaintiff's first claim for relief is dismissed with prejudice.

C.     Fraud and Conspiracy Claims (Second and Eighth Claims for Relief)

In his second claim for relief, plaintiff alleges that defendant with "reckless indifference to the consequences, consciously and intentionally acted to participate in a conspiracy to increase the value of the property by way of the appraisal information and then, [sic] *institute the action in*

---

[2] Plaintiff apparently paid defendant without questioning the validity of the assignment, at least from March 2007 through January 2009.

*foreclosure* with knowledge that it does not have legal ownership to commence such an action, and that the assignment of mortgage was knowingly defective by the operation of law and the failure to adequately provide proper documentation * * *." (Compl., ¶ 6) (emphasis added). In his eighth claim for relief, plaintiff alleges that "defendant and prior [sic] engaged in an unlawful combination [sic] and conspiracy to foreclose on the home and loans against individuals for the purpose of unjustly enriching themselves * * *." (Compl., ¶ 28).

      i.    Fraud Claim

To the extent plaintiff is attempting to plead claims of fraud, such claims fail. Initially, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Speculative and conclusory allegations of intent are insufficient. Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004). Pursuant to Rule 9(b), a plaintiff is required to: (1) detail the statements or omissions alleged to be fraudulent; (2) identify the speaker; (3) state where and when the statements or omissions were made; and (4) explain why the statement or omissions are fraudulent. Eternity Global, 375 F.3d at 187; Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996). Plaintiff's complaint wholly fails to comply with the specificity requirements of Rule 9(b). See, e.g. Olsen v. Pratt & Whitney Aircraft, Div. of United Technologies Corp., 136 F.3d 273, 275 (2d Cir. 1998)(dismissing the plaintiff's allegations of fraud as conclusory and lacking in particulars where he did not specify what was said, who said it, where and when the statements were said, or why the statements were

13

fraudulent); Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986) (holding that allegations which failed to specify the time, place and speaker of the alleged misrepresentation lacked the specificity required by Rule 9[b]).

In any event, plaintiff cannot establish a fraud claim against defendant. The elements of a fraud claim under New York law are: "[1] a material misrepresentation [or omission] of a fact, [2] knowledge of its falsity, [3] an intent to induce reliance, [4] justifiable reliance by the plaintiff and [5] damages." Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009); see also Haggerty v. Ciarelli & Dempsey, No. 09-2135-cv, 2010 WL 1170352, at * 2 (2d Cir. Mar. 25, 2010). Plaintiff does not allege, *inter alia*, that defendant made any material misrepresentation of fact with respect to its notice of intent to commence foreclosure proceedings if plaintiff did not cure his default under the mortgage loan and Note, nor could he because, *inter alia*, such a remedy is expressly authorized in the mortgage and Note executed by plaintiff and, thus, would not be false. Moreover, plaintiff cannot establish that he justifiably relied on any misrepresentation by defendant regarding the nature of the ARM loan because, *inter alia*, defendant was not present during the closing and, in any event, plaintiff paid adjusted monthly payments for twenty (20) months prior to his default, thus controverting plaintiff's claim that he believed the mortgage and Note were fixed rate instruments. Nor can plaintiff establish any damages resulting from any alleged misrepresentation of fact by defendant since no foreclosure action has been commenced to date by defendant. Accordingly, plaintiff cannot establish a fraud claim against defendant as a matter of law.

ii.    Civil Conspiracy Claims

To the extent plaintiff is alleging that defendant participated in a conspiracy to commit

fraud, such a claim also fails. "New York does not recognize civil conspiracy to commit a tort as

an independent cause of action * * *; rather, such a claim stands or falls with the underlying

tort." Hebrew Institute for the Deaf and Exceptional Children v. Kahana, 57 A.D.3d 734, 735,

870 N.Y.S.2d 85 (2d Dept. 2008) (citations omitted); see also Thome v. Alexander & Louisa

Calder Foundation, 70 A.D.3d 88, 890 N.Y.S.2d 16, 31 (1st Dept. 2009); Roche v. Claverack Co-

op Ins. Co., 59 A.D.3d 914, 918, 874 N.Y.S.2d 592 (3d Dept. 2009); Thyroff v. Nationwide Mut.

Ins. Co., 57 A.D.3d 1433, 1435, 870 N.Y.S.2d 666 (4th Dept. 2008). Since plaintiff's civil

conspiracy claims are derivative of underlying claims for fraud, which are not themselves viable

claims, he cannot establish a civil conspiracy claim as a matter of law.

In any event, in order to establish a viable cause of action for conspiracy to defraud under

New York law, a plaintiff must demonstrate: "the primary tort and * * * (a) a corrupt agreement

between two or more persons; (b) an overt act in furtherance of the agreement; (c) the parties

[sic] intentional participation in the furtherance of a plan or purpose; [and] (4) [sic] the resulting

damage * * *." Gorham-DiMaggio v. Countrywide Home Loans, Inc., 592 F.Supp.2d 283, 299

(N.D.N.Y. 2008) (quoting 777388 Ontario Ltd. v. Lencore Acoustics Corp., 142 F.Supp.2d 309,

319 (E.D.N.Y. 2001)). Regardless of whether plaintiff can establish a claim for fraud against

defendant, he cannot establish, *inter alia*, that defendant agreed with any other entity to cooperate

in any fraudulent scheme; that defendant committed any overt act in furtherance of the

agreement– indeed, defendant did not commit the alleged overt act of commencing a foreclosure

proceeding–; or any damages resulting from the alleged fraud. Accordingly, the branches of

defendant's motion seeking dismissal of plaintiff's second and eighth claims for relief are granted and those claims are dismissed with prejudice.

### D. Trespass Claim (Third Claim for Relief)

In his third claim for relief, plaintiff alleges that he has been "deprived of the peaceful enjoyment of his property" by defendant's trespass and that defendant's conduct has injured his credit and "ability to obtain any soft monies through other legitimate financial institutions or banks at the current rate of the market value and ration." (Compl., ¶ 8).

"Under New York law, trespass is the interference with a person's right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." New York ex rel. Spitzer v. Operation Rescue National, 273 F.3d 184, 201 (2d Cir. 2001) (internal quotations and citation omitted). "The essence of trespass to real property is injury to the right of possession * * *." Bloomingdales, Inc. v. New York City Transit Authority, 13 N.Y.3d 61, 66, 886 N.Y.S.2d 663, 915 N.Ed.2d 608 (N.Y. 2009); see also Romeo v. Sherry, 308 F.Supp.2d 128, 142-143 (E.D.N.Y. 2004). In order to establish a claim for trespass, the plaintiff must show "a wrongful or unjustifiable entry upon his land." Romeo, 308 F.Supp.2d at 143. "[W]hile the trespasser, to be liable, need not intend or expect the damaging consequences of his intrusion, he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness." Ivancic v. Olmstead, 66 N.Y.2d 349, 352, 497 N.Y.S.2d 326, 488 N.E.2d 72 (N.Y. 1985) (internal quotations and citation omitted).

Plaintiff cannot establish that any affirmative act by defendant interfered with his

possession of his real property, particularly since defendant has not commenced a foreclosure proceeding to date. Moreover, since plaintiff's allegation that defendant's conduct injured his credit and ability to obtain "soft monies" does not relate to real property in his possession, that allegation does not support a claim for trespass. In any event, plaintiff cannot establish that any wrongful conduct by defendant, as opposed to plaintiff's own conduct in failing to perform his payment obligations under the mortgage loan and Note, caused any damage to plaintiff's credit or ability to obtain "soft monies". Accordingly, the branch of defendant's motion seeking summary judgment dismissing plaintiff's claim for trespass is granted and plaintiff's third claim for relief is dismissed with prejudice.

E.    Abuse of Process Claims (Fourth and Sixth Claims for Relief)

In his fourth claim for relief, plaintiff alleges that defendant "abused the banking procedure by * * * issu[ing] a high cost loan absent any proof of the plaintiff [sic] or income-verification for the purpose of learning whether the plaintiff was able to make such monthly mortgage payments;"[3] "participated in the abuse of the appraisal process against the plaintiff;" "knew or should have known that the closing procedure was so defective on its face * * * that any such adverse process would cause significant injuries to the plaintiff[] * * *;"[4] and caused plaintiff to incur costs and attorney's fees "in defending the abusive threat of foreclosure process

---

[3] Clearly, plaintiff's income was such that he was able to pay the adjusted monthly payments under the mortgage and Note for almost four (4) years, i.e., from April 2005 through January 2009.

[4] As NovaStar's assignee, there is no evidence that defendant participated in any way in the appraisal of plaintiff's property in March 2005 or in the closing on March 25, 2005.

17

and proceedings."[5]  (Compl., ¶¶ 10-12).  In his sixth claim for relief, plaintiff alleges that defendant either negligently or wantonly commenced an eviction proceeding against him and has illegally threatened a foreclosure proceeding against him.  (Compl., ¶¶ 18-22).

In order to establish a claim for abuse of process under New York law, a plaintiff must demonstrate that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001) (citing Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)); see also Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003).

Initially, plaintiff's abuse of process claim fails as a matter of law because, *inter alia*, plaintiff fails to plead special damages.  See, e.g. Jacques v. DiMarzio, Inc., 216 F.Supp.2d 139, 142 (E.D.N.Y. 2002), aff'd, 386 F.3d 192 (2d Cir. 2004) (holding that a party must allege and prove actual or special damages in order to recover); Beezhold v. Allegiance Healthcare Corp., No. 99 Civ. 0299, 2000 WL 1092886, at * 3 (S.D.N.Y. Aug. 4, 2000) (accord); Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n, Inc. Local 1889 AFT AFL-CIO, 38 N.Y.2d 397, 405, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975) (accord).

Nevertheless, plaintiff cannot establish an abuse of process claim against defendant because, *inter alia*, defendant has not commenced a foreclosure or eviction proceeding against plaintiff and, in any event, defendant is expressly granted the right to commence such a foreclosure proceeding upon plaintiff's default of the mortgage and Note and, thus, plaintiff

---

[5]  As noted, no foreclosure proceeding has been commenced against plaintiff which he is required to defend.  The only action on the mortgage and Note to date is this action commenced by plaintiff himself.

cannot establish that any proceeding was commenced without excuse or justification.

Accordingly, the branches of defendant's motion seeking dismissal of plaintiff's abuse of process claims are granted and plaintiff's fourth and sixth claims for relief are dismissed with prejudice.

F.     Slander of Title Claim (Fifth Claim for Relief)

In his fifth claim for relief, plaintiff alleges that defendant slandered plaintiff's title by threatening foreclosure even though "it was known during the closing that '. . . the mortgage was a no-documentation or state mortgage. . . .', which means that plaintiff did not have to prove any income history." (Compl., ¶ 14).

In order to establish a slander of title claim under New York law, a plaintiff must establish: (1) that defendant made "a communication falsely casting doubt on the validity of [plaintiff's] title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." 39 College Point Corp. v. Transpac Capital Corp., 27 A.D.3d 454, 810 N.Y.S.2d 520, 521 (2d Dept. 2006); see also Pelc v. Berg, 68 A.D.3d 1672, 893 N.Y.S.2d 404, 406 (4th Dept. 2009). In order to establish that the false communication was reasonably calculated to cause the plaintiff harm, the plaintiff must show that it was made with malicious intent or reckless disregard for its truth or falsity. See Vollbrecht v. Jacobson, 40 A.D.3d 1243, 838 N.Y.S.2d 188, 191-192 (3d Dept. 2007).

Initially, plaintiff's slander of title claim fails as a matter of law because plaintiff has not pleaded special damages. See Collision Plan Unlimited, Inc. v. Bankers Trust Co., 63 N.Y.2d 827, 831, 482 N.Y.S.2d 252, 472 N.E.2d 28 (N.Y. 1984) (affirming the dismissal of the slander of title claim for failure to allege special damages); see also Pelc, 893 N.Y.S.2d at 406 (holding

19

that the pleading of special damages is a prerequisite for a slander of title claim).

In any event, plaintiff has not alleged any false communication by defendant. Assuming plaintiff is relying on defendant's April 28, 2009 letter, since the June 25, 2009 letter had not been sent at the time plaintiff commenced this action, that letter merely constituted notice to plaintiff of potential remedies available to defendant due to plaintiff's default on the mortgage loan and Note and, thus, did not constitute a "false communication" as a matter of law. Moreover, since the mortgage and Note executed by plaintiff expressly granted defendant the right to commence a foreclosure proceeding in the event of plaintiff's default thereunder, plaintiff cannot establish that defendant's act in sending the letter to plaintiff was made with malicious intent or reckless disregard for the truth, or was otherwise reasonably calculated to cause plaintiff harm. Accordingly, the branch of defendant's motion seeking summary judgment dismissing plaintiff's slander of title claim is granted and plaintiff's fifth claim for relief is dismissed with prejudice.

G. Unjust Enrichment Claim (Seventh Claim for Relief)

In his seventh claim for relief, plaintiff alleges that defendant's conduct in foreclosing on plaintiff's home would result in defendant "being unjustly enriched by the payment of fees, insurance proceeds and equity in the home." (Compl., ¶ 24).

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (quoting Kaye v. Grossman, 202

F.3d 611, 616 (2d Cir. 2000)). A claim for unjust enrichment under New York law is a "quasi-contract" claim, i.e., "an obligation imposed by equity to prevent injustice, *in the absence of an actual agreement between the parties concerned*." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355, 907 N.E.2d 268 (N.Y. 2009) (emphasis added). Where a valid and enforceable agreement exists between the parties, or their assigns, governing a particular subject matter, "recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." Id.; see also Cox v. NAP Construction Co., Inc., 10 N.Y.3d 592, 607, 861 N.Y.S.2d 238, 891 N.E.2d 271 (N.Y. 2008) (holding that a party may not recover on an unjust enrichment claim where the parties have entered into a written agreement that governs the subject matter of the claim); Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y. 1987) ("The existence of a valid and enforceable contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.")

Since plaintiff's claims arise out of the same subject matter as the mortgage and Note, plaintiff cannot establish an unjust enrichment claim against defendant, NovaStar's assignee, as a matter of law. Accordingly, the branch of defendant's motion seeking dismissal of plaintiff's unjust enrichment claim is granted and plaintiff's seventh claim for relief is dismissed with prejudice.

## III. Conclusion

For the reasons stated herein, in accordance with Rule 12(d) of the Federal Rules of Civil Procedure, defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) is converted to

21

a motion for summary judgment pursuant to Rule 56 and, as converted, the motion is granted and the complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to enter judgment in favor of defendant, to close this case and to serve notice of entry of this Order in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiff at his last known address, <u>see</u> Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: April 9, 2010
      Central Islip, N.Y.